TOGUT, SEGAL & SEGAL LLP
One Penn Plaza
Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut
Frank A. Oswald
Brian F. Moore

Proposed Counsel to the
  Debtors and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
                                                  :
In re:                                            :        Chapter 11
                                                  :
LOEHMANN'S HOLDINGS, INC., *et al.*,              :        Case No. 10-16077 through 10-16081 [REG]
                                                  :
                                    Debtors.      :        (Motion for Joint Administration
                                                  :        Pending)
---------------------------------------------------------------X

**DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS PURSUANT
TO 11 U.S.C. §§ 105(a), 363(b), AND 503(b)(9) REQUESTING AUTHORITY
TO HONOR CERTAIN UNDISPUTED PREPETITION OBLIGATIONS OF
CERTAIN ESSENTIAL VENDORS, SUPPLIERS, AND SERVICE PROVIDERS**

Loehmann's Holdings, Inc. and its debtor affiliates, as debtors and debtors

in possession (collectively, "Loehmann's" or the "Debtors"),[1] hereby move (the

"Motion") this Court for entry of an interim order, under sections 105(a), 363(b) and

503(b)(9) of the Bankruptcy Code, (i) authorizing, but not directing, them to pay

prepetition claims of certain of their vendors that are essential to maintaining the going

concern of the Debtors' business enterprise (the "Essential Vendors," whose prepetition

claims shall be identified as "Essential Vendor Claims") and (ii) scheduling a final

hearing (the "Final Hearing") to consider the relief requested on a final basis. In

support of the Motion, the Debtors rely upon and incorporate by reference the

---

[1]    The Debtors are the following entities: Loehmann's Holdings, Inc., Loehmann's, Inc., Loehmann's
       Real Estate Holdings, Inc., Loehmann's Operating Co., and Loehmann's Capital Corp.

declaration of Joseph Melvin filed under Local Bankruptcy Rule 1007-2 and in support

of the Debtors' Chapter 11 petitions (the "Declaration"), filed with the Court

concurrently herewith.  In further support of the Motion, the Debtors, by and through

their undersigned counsel, respectfully represent.

## JURISDICTION

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these

cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are

Bankruptcy Code sections 105(a), 363(b) and 503(b)(9).

## BACKGROUND

3.      On the date hereof (the "Petition Date"), the Debtors filed

voluntary petitions in this Court for relief under Chapter 11 of the Bankruptcy Code.

The factual background regarding the Debtors, including their business operations,

their capital and debt structure, and the events leading to the filing of these bankruptcy

cases, is set forth in detail in the Declaration filed concurrently herewith and fully

incorporated herein by reference.[2]

## RELIEF REQUESTED

4.      By this Motion, pursuant to sections 105(a), 363(b), and 503(b)(9) of

the Bankruptcy Code, the Debtors seek discretionary authority to pay, in the exercise of

their sound business judgment, certain undisputed Essential Vendor Claims owed to

certain of their key vendors, suppliers, service providers and similar counterparties that

---

[2]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Declaration.

the Debtors deem essential to maintaining Loehmann's' ongoing business operations. The proposed form of order approving the relief requested herein on an interim basis is annexed hereto as Exhibit "A" (the "Interim Order") and, on a final basis, as Exhibit "B" (the "Final Order" and, with the Interim Order, the "Orders").

5.      In recognition of the extraordinary nature of the relief requested herein, and so as to ensure the benefit estimated to these estates are preserved, the Debtors propose to condition payment of any Essential Vendor Claims on that Essential Vendor's binding agreement to continue supplying its goods or services to the Debtors on Customary Trade Terms (as defined below) during the pendency of these cases. In the event that such Essential Vendor, after receipt of payment, fails to provide the Debtors with any goods and/or services requested upon customary trade terms and/or contractual terms (together, "Customary Trade Terms") during the pendency of these Chapter 11 cases, the Debtors further propose that such postpetition payment be deemed an unauthorized postpetition transfer and, therefore, recoverable by the Debtors pursuant to section 549 of the Bankruptcy Code.

6.      Lastly, the Debtors also request that the Court authorize and direct all banks and other financial institutions (each, a "Bank" and collectively, "Banks") on which checks are drawn or electronic funds are transferred with respect to the Essential Vendor Claims to receive, process, honor, and pay, to the extent of funds on deposit, any and all such checks or electronic transfers, whether such checks or transfers were issued before or after the Petition Date, upon the receipt by each Bank of notice of authorization without further order of the Court.

## THE ESSENTIAL VENDORS

### A.     Loehmann's Relationship with the Essential Vendors

7.      In-season brand name designer merchandise is the lifeblood of Loehmann's business.   Accordingly, the vendors identified by the Debtors to be deemed Essential Vendors are critical to Loehmann's day-to-day operations because they are one of a kind specialty fashion retail brands and because obtaining a replacement source for the merchandise would be impossible or entail substantial delay or significantly increased costs.  Thus, in the event of a failure by any of the Essential Vendors, the Debtors believe they would have no alternative supplier or service provider for these specific brands.  Thus, to ensure a seamless transition into Chapter 11 and prevent significant harm to these estates, the Debtors seek the relief requested herein.

8.      Making payments to the holders of such Essential Vendor Claims in accordance with ordinary trade terms will benefit the Debtors by minimizing the risk of any deterioration in their enterprise value during the course of these Chapter 11 cases without impairing the operational integrity of the Debtors' underlying businesses.

9.      Allowing for the "seamless" transition of these Chapter 11 cases and continued "business as usual" will preserve the core business and enterprise value upon which the restructuring is predicated.  A fundamental aspect of the Debtors' efforts to minimize disruption during the Chapter 11 process is the ability to preserve and sustain their relationships with parties who supply merchandise to the Debtors, such as the Essential Vendors. The perception of these Chapter 11 cases by these parties is vital to maintaining the enterprise value of the Debtors' businesses, and ultimately, to the success of the Debtors' reorganization.

10.     In analyzing which vendors -- if any -- should be deemed Essential Vendors, the Debtors identified those vendors whose are most essential to the Debtors' operations using the following criteria: (a) whether the vendor in question is a "sole-source" provider, and (b) the overall impairment on the Debtors' operations that would result if the particular Essential Vendor ceased or delayed services or shipments.

11.     In so doing, the Debtors also reviewed to what extent a vendor being considered for the status of an Essential Vendor otherwise has an assurance of payment.   For instance, some vendors, or theirs factors (to the extent a vendor finances or assigns the collections of its Loehmann's receivables), have a letter of credit posted in its favor under the Debtors' Prepetition Credit Agreement.

12.     The Debtors also ruled out vendors that are parties to merchandise supply agreements.  Accordingly, the Essential Vendors identified by the Debtors are vendors who ship merchandise on "open account" and not under a contract under which the Debtors could otherwise seek to compel performance under section 362 of the Bankruptcy Code.

13.     Further, the Debtors also considered the need for a particular vendor's merchandise to be in stock as of the commencement of these cases because, as its customers know, Loehmann's merchandise is in-season and it is imperative that the right merchandise be available during the imminent holiday selling season just as it is available in its competitors' stores.

14.     The Debtors estimate that, as of the Petition Date, the total amount of undisputed, outstanding prepetition obligations due to the Essential Business Vendors for which the Debtors seek discretionary authority to pay approximately $3,250,000 and, of such amounts, approximately $600,000 are on account of section

503(b)(9) claims. Of this total, to the extent merchandise would have been customarily

shipped on "net 45-day" terms, approximately another $1 million is estimated to

become due during the first 21 days of these cases, the interim period between entry of

the proposed Interim Order and earliest time when the order could become a Final

Order.

B.    **Proposed Terms of Payment**

15.    As set forth above, the Debtors propose to condition payment of

any Essential Vendor Claims on that Essential Vendor's binding agreement to continue

on a postpetition basis to supply its goods or services to the Debtors on Customary

Trade Terms. To facilitate this process, the Debtors propose that each selected Essential

Vendor execute a simple letter agreement (the "Essential Vendor Agreement") in

substantially the form annexed hereto as Exhibit "C."

16.    A summary of the key terms of the Essential Vendor Agreement is

as follows:

1.    The Essential Vendor agrees to be bound by the executed Essential
Vendor Agreement throughout the pendency of the Chapter 11 cases.

2.    The Customary Trade Terms shall be those trade terms between the
Debtors and the Essential Vendor that were in effect the day prior to the
Petition Date, or such other terms as agreed between the Debtors and the
Essential Vendor, pursuant to the executed Essential Vendor Agreement.
These Customary Trade Terms shall include, but not be limited to, credit
terms, historical pricing conventions, historical product volumes, cash
discounts, payment terms, allowances, rebates, normal product
availability, and other applicable terms.

3.    By executing the Essential Vendor Agreement, the Essential Vendor
acknowledges that it has reviewed the terms and provisions of the Motion
and Orders and that it consents to be bound thereby.

4.    If an Essential Business Vendor refuses to supply goods and/or services to
the Debtors on Customary Trade Terms following receipt of payment on
its Essential Vendor Claim, or fails to comply with any Essential Vendor

Agreement entered into between such Essential Business Vendor and the Debtors, the Debtors may in their discretion, and without further order of the Court, (i) declare that payments made to the Essential Business Vendor on account of its Essential Vendors' Claims be deemed payment of any outstanding postpetition claims of such vendors, and (ii) require that the Essential Business Vendor immediately repay to the Debtors any payment made to it in excess of the postpetition claim, without giving effect to any rights of setoff, claims, provision for payment of reclamation or trust fund claims, or otherwise.

5.     Any dispute with respect to the Essential Vendor Agreement or the Orders shall be determined by the Bankruptcy Court.

## BASIS FOR RELIEF REQUESTED

17.     The Debtors submit that the relief requested is reasonable and necessary under the circumstances and is justified by applicable law.  To successfully reorganize, Loehmann's must be authorized to pay, in its sound business judgment, those undisputed claims of the Essential Vendors that, absent payment, would render immediate and irreparable harm to Loehmann's' business as it will not have sufficient merchandise in its stores at this critical holiday shopping juncture.

**A.     Payment of the Prepetition Claims Comports
With the Debtors' Business Judgment and is Authorized
Under Sections 363(b) and 105(a) of the Bankruptcy Code**

18.     Section 363(b)(1) of the Bankruptcy Code provides that, after notice and a hearing, the trustee "may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Section 105(a) of the Bankruptcy Code further empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Id. § 105(a).  A Bankruptcy Court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr.  S.D.N.Y. 1989). "Under Section 105, the court can permit pre-plan payment of a pre-petition obligation

when essential to the continued operation of the debtor." <u>In re NVR L.P.</u>, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing <u>Ionosphere Clubs</u>, 98 B.R. at 177).

19.     Federal courts have consistently permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. <u>See, e.g.</u>, <u>Miltenberger v. Logansport Ry.</u>, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of [crucial] business relations"); <u>Dudley v. Mealey</u>, 147 F.2d 268 (2d Cir. 1945), *cert. denied*, 325 U.S. 873 (1945) (Second Circuit extends doctrine for payment of prepetition claims beyond railroad reorganization cases); <u>Mich. Bureau of Workers' Disability Compensation v. Chateaugay Corp. (In re Chateaugay Corp.)</u>, 80 B.R. 279, 285-86 (S.D.N.Y. 1987), *appeal dismissed*, 838 F.2d 59 (2d Cir. 1988) (approving lower Court order authorizing payment of prepetition wages, salaries, expenses, and benefits); <u>In re Boston & Me. Corp.</u>, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to debtors' continued operation).

20.     The doctrine of necessity functions in a chapter 11 case as a mechanism by which the Bankruptcy Court can exercise its equitable power to facilitate a successful reorganization by allowing payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code. <u>See In re Just for Feet, Inc.</u>, 242 B.R. 821, 824 (D. Del. 1999) (recognizing that "[c]ertain pre-petition claims by employees and trade creditors . . . may need to be paid postpetition to facilitate a successful reorganization").

21.     The doctrine is frequently invoked early in a chapter 11 case. The Court in <u>In re Structurelite Plastics Corp.</u>, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988),

indicated its accord with "the principle that a Bankruptcy Court may exercise its equity powers under section 105(a) to authorize payment of prepetition claims where such payment is necessary to permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately." The Court stated that "a *per se* rule proscribing the payment of prepetition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code." Id. at 932. The rationale for the doctrine of necessity rule is consistent with the paramount goal of chapter 11 of "facilitating the continued operation and rehabilitation of the debtor." Ionosphere Clubs, 98 B.R. at 176.

22.     The continued relationship with the Essential Vendors is critical to Loehmann's ability to deliver merchandise to its stores and customers. The Essential Vendors specifically chosen here to service Loehmann's needs as effectively as possible and in the most cost efficient manner. Furthermore, Loehmann's believes that the cost of establishing new relationships with alternative vendors, to the extent there are any alternative vendors, will be substantially more expensive and disruptive to the Debtors' operations.

23.     Prior to the Petition Date, Loehmann's began experiencing difficulty establishing relationships with alternative vendors, especially those who would offer trade terms similar or better than the ones in place with the Essential Vendors. Therefore, there is a real possibility that should certain Essential Business Vendors cease doing business with the Debtors, the Debtors will not be able to find replacement vendors for the merchandise necessary to continue operations in the ordinary course of business during these Chapter 11 cases. Given this possibility, the Debtors submit that the amount of the Essential Vendors' Claims is *de minimus* in

comparison to the value that will accrue to these estates' stakeholders from an uninterrupted production and supply of merchandise, whether in stores or online. The Debtors submit that continuing relationships with these vendors on a postpetition basis is essential in allowing Loehmann's to sustain and reorganize it business, and capitalize on the financial restructuring in these Chapter 11 cases.

24.     The relief sought herein is entirely consistent with the intent of section 105(a) of the Bankruptcy Code and the rehabilitative purpose of Chapter 11, and similar relief has been granted in other chapter 11 cases of similar size in this district.[3] See, e.g., In re Blockbuster Inc., Ch. 11 Case No. 10-14997 (BRL) [Docket No. 93]; In re Uno Restaurant Holdings Corporation, Ch. 11 Case No. 10-10209 (MG) [Docket No. 33]; In re U.S Shipping Partners L.P., et al., Ch. 11 Case No. 09-12711 (RDD) [Docket No. 197]; In re Bally Total Fitness of Greater New York, Inc., et. al., Ch. 11 Case No. 08-14818 (BRL) (Bankr. S.D.N.Y. 2009) [Docket No. 388]; In re Dana Corp., Ch. 11 Case No. 06-10354 (BRL) (Bankr. S.D.N.Y. 2006) [Docket No. 722]; In re Neff Corp., et al., Ch. 11 Case No. 10-12610 (SCC) (Bankr. S.D.N.Y. 2010) [Docket No. 128]; In re Uno Restaurant Holdings Corporation, Ch. 11 Case No. 10-10209 (MG) (Bankr. S.D.N.Y. 2010) [Docket No. 148]; In re General Motors Corp., et al., Ch. 11 Case No. 09-50026 (REG) (Bankr. S.D.N.Y. 2009) [Docket No. 2533].

25.     Here, without the benefit of an order authorizing the Debtors to pay for the Essential Vendors Claims, several Essential Vendors may refuse to ship such merchandise (or may recall shipments thereof) unless the Debtors' bring such Essential

---

[3]     Additionally, the Debtors' request to pay Essential Vendor Claims satisfies the concerns set forth in cases critical of the payment of Essential Vendors. See e.g., In the Matter of Kmart Corp., 359 F.3d 866 (7th Cir. 2004) (finding that to pay "critical vendors" requires showing that (i) recipients would not have continued post-petition business with debtor absent payment and (ii) payment would improve prospects for other noncritical vendor creditors)

Vendors' current. Because merchandise is the lifeblood of Loehmann's, the granting of this Motion would allay concerns of Essential Vendor and customers, and facilitate a smooth transition into Chapter 11, which will benefit all unsecured creditors.

26.     Making payments to the holders of such claims in accordance with the relief requested in the Motion will benefit the Debtors by helping the Debtors and their estates by minimize the risk of any continued deterioration of the business during the course of these Chapter 11 cases without impairing the operational integrity of the Debtors' underlying businesses.

27.     Allowing for the "seamless" transition of their bankruptcy cases and continued "business as usual" during what the Debtors anticipate will be a brief period prior to plan confirmation will preserve the enterprise value upon which the plan is predicated.

28.     A fundamental aspect of the Debtors' efforts to minimize disruption during the Chapter 11 process is the ability to preserve and sustain their relationships with parties who supply crucial merchandise, such as the Essential Vendors. The perception of these Chapter 11 cases by these parties is vital to maintaining the Debtors' businesses, and ultimately, to the success of the Debtors' reorganization, which warrants the making of payments on Essential Vendor Claims upon the facts and circumstances presented here. See In re Zenith Indust. Corp., 319 B.R. 810, 817 (Bankr. D. Del. 2005) ("Approval of a critical vendor motion is discretionary based upon the facts and circumstances presented.") (citing In re Just for Feet, Inc., 242 B.R. 821, 824-26 (D. Del. 1999)).

**B.      Certain Essential Vendor Claims
May Be Entitled to Administrative Expense Priority
Status Pursuant to Section 503(b)(9) of the Bankruptcy Code**

29.      Section 503(b)(9) of the Bankruptcy Code provides that

administrative expense priority status shall be granted to creditors holding claims for

"the value of any goods received by the debtor within 20 days before the date of

commencement of a case under this title in which the goods have been sold to the

debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9).

Loehmann's estimates that approximately $600,000 of the proposed discretionary

budgeted amount it seeks to pay to the Essential Vendors is derived from merchandise

received by Loehmann's within twenty (20) days prior to the Petition Date. As such,

these Essential Vendor Claims are entitled to administrative expense priority status.

Accordingly, other unsecured creditors will not be prejudiced by Loehmann's payment

of these prepetition claims.

**C.      Applicable Banks Should Be Directed to Honor and Process
Checks and Transfers Related to the Essential Vendor Claims**

30.      In furtherance of the relief requested herein, the Debtors request

that the Court authorize and direct their Banks to receive, honor, process, and pay, to

the extent of funds on deposit, any and all checks or electronic transfers requested or to

be requested by the Debtors relating to the Essential Vendor Claims, including those

checks or electronic transfers that have not cleared the Banks as of the Petition Date,

without the need for further Court approval.

31.      The Debtors also seek authority to replace any prepetition checks or

electronic transfers relating to the Essential Vendor Claims that may be dishonored or

rejected. Each of the checks or electronic transfers can be readily identified as relating

directly to the authorized payment of the Essential Vendor Claims. The Debtors believe

that prepetition checks and electronic transfers, other than those for Essential Vendor

Claims, or those authorized by another order of the Court, may not be honored

inadvertently.  The Debtors also request that the Banks be authorized and directed to

rely on the representations of the Debtors as to which checks and electronic transfers are

in payment of the Essential Vendor Claims.

**D.**     **Deemed Compliance and/or Waiver with Applicable Bankruptcy Rules**

**1.**     **The Requested Relief Satisfies Bankruptcy Rule 6003**

32.     Bankruptcy Rule 6003 provides that the relief requested in this

Motion may be granted if the "relief is necessary to avoid immediate and irreparable

harm."  Fed. R. Bankr. P. 6003.  The Second Circuit has interpreted the language

"immediate and irreparable harm" in the context of preliminary injunctions.  In that

context, the court instructed that irreparable harm "'is a continuing harm which cannot

be adequately redressed by final relief on the merits' and for which 'money damages

cannot provide adequate compensation.'"  Kamerling v. Massanari, 295 F.3d 206, 214

(2d Cir. 2002) (quoting N.Y. Pathological & X-Ray Labs., Inc. v. INS, 523 F.2d 79, 81 (2d

Cir. 1975)).  Further, the "harm must be shown to be actual and imminent, not remote or

speculative."  Id. at 214.  See also Rodriguez v. DeBuono, 175 F.3d 227, 234 (2d Cir. 1998).

The Debtors estimate that approximately $1 million of Essential Vendor Claims are to

become due during the first 21 days of these cases.  The Debtors submit that for the

reasons already set forth herein, and as set forth in the Declaration, the relief requested

in this Motion is necessary to avoid immediate and irreparable harm as defined by the

Second Circuit and, accordingly, submit that Bankruptcy Rule 6003 is satisfied.

**2.**     **Waiver of Bankruptcy Rules 6004(a) and (h)**

33.     Unless the Court orders otherwise, Bankruptcy Rule 6004(a) requires the Debtors to provide 21 days notice to all creditors and certain other parties in interest of the use of property outside the ordinary course of business.  Moreover, unless the Court orders otherwise, Bankruptcy Rule 6004(h) automatically stays for 14 days any order granting such relief.  As described above and in the Declaration the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors that would otherwise be caused by a delay in the relief requested herein.

34.     Accordingly, the Debtors request the Court waive (i) the notice requirements under Bankruptcy Rule 6004(a) and (ii) the stay of the order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## NOTICE

35.     Notice of this Motion has been provided by either facsimile, electronic transmission, overnight delivery, or hand delivery to: (i) the Office of the United States Trustee for the Southern District of New York, (ii) the entities listed on the Debtors' Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d);  (iii) the entities listed on the Debtors' Consolidated List of Prepetition Secured Creditors;  (iv) counsel to the agent for the Debtors' prepetition credit facility and lender under the proposed DIP Financing Facility;  (v) the Office of the United States Attorney for the Southern District of New York;  (vi) the Office of the Attorney General of New York;  (vii) the Internal Revenue Service;  and (viii) any parties required to be served under any applicable Bankruptcy Rule or Local Rule.  The Debtors submit that no other or further notice need be provided.

36.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of an order, substantially similar to the proposed form of order attached hereto as Exhibit "A," granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.


Dated:    New York, New York
          November 15, 2010

                                        LOEHMANN'S HOLDINGS, INC., *et al.*,
                                        By Their Proposed Counsel
                                        TOGUT, SEGAL & SEGAL LLP
                                        By:

                                        /s/ Frank A. Oswald
                                        FRANK A. OSWALD
                                        A Member of the Firm
                                        One Penn Plaza, Suite 3335
                                        New York, New York 10019
                                        (212) 594-5000