EXHIBIT 11.1



# Loehmann's Operating Co. ,
# the Reorganized Debtor
**Summary of Terms and Conditions
For Revolving Credit Facility
02/[__]/11**

*THESE PROPOSED TERMS AND CONDITIONS, AND SUCH OTHER TERMS AND CONDITIONS AS THE PARTIES MAY AGREE ON, WILL FORM THE BASIS FOR PROCEEDING TO DEFINITIVE DOCUMENTATION FOR THE FACILITY. ENTRY INTO THE FACILITY IS SUBJECT TO AGREEMENT ON DEFINITIVE DOCUMENTATION.*

| | |
|---|---|
| **Borrower:** | Loehmann's Operating Co. and its subsidiaries, as the reorganized debtors (collectively, the "Borrower" or the "Company"). |
| **Guarantors:** | Loehmann's Holdings Inc., Loehmann's, Inc. and Loehmann's Real Estate Holdings, Inc., (the "Guarantors") (such Guarantors referred to with the Borrower each as a "Loan Party" and collectively as the "Loan Parties"). |
| **Agent:** | Crystal Financial LLC (the "Agent"). |
| **Lender:** | Crystal Financial LLC and other lenders TBD (the "Lenders"). |
| **Prepetition Credit Agreement:** | Credit Agreement, dated as of September 15, 2010 (as amended, restated, supplemented or otherwise modified), by and among Borrower and Crystal Financial LLC, as lender and administrative agent and the other lenders party thereto (the "Prepetition Credit Agreement"). |
| **DIP Credit Agreement**: | Debtor-in-Possession Credit Agreement, dated as of November [___], 2010 (as amended, restated, supplemented or otherwise modified), by and among Borrower and Crystal Financial LLC, administrative agent (the "DIP Agent"), and the Lenders party thereto (the "DIP Lenders") (the "DIP Credit Agreement"). |
| **Exit Facility:** | $45MM Revolving Line of Credit ("Exit Facility") (subject to Borrowing Base and other applicable provisions below). |
| | The Facility will contain a prepayment fee of 3% of the aggregate loan commitments, payable if the revolving loan commitments are terminated prior to Maturity (as defined |

below).  Any prepayment fee that may become due under the DIP Credit Agreement will be waived.

**Revolver Drawdown/ Repayments:** The Borrower may request same-day borrowings in writing, subject to Borrowing Base availability.

**Purpose:** To refinance the DIP Facility, provide for working capital needs and to fund certain fees and expenses associated with the emergence and Facility financing.

**Maturity**: One year from the Closing Date (the "Maturity").

**Collateral Security:** The Loan Parties shall execute and deliver to the Agent any documents as the Agent and Required Lenders may reasonably require in order to provide to the Agent a perfected security interest in any presently existing assets of any Loan Party in which the Agent does not currently have a perfected security interest (including, without limitation, account control agreements for all of the Borrower's accounts), [other than those properties that are subject to certain real estate financing and real estate related sale/leaseback obligations].  The Loan Parties shall execute and deliver to the Agent any documents as the Agent and Required Lenders may reasonably require in order to provide to the Agent a perfected security interest in any asset [(including, without limitation, any new store location)] of any Loan Party.

**Borrowing Base:** The Facility will be governed by a Borrowing Base, consistent with the Borrowing Base set forth in the Prepetition Credit Agreement.  Advance rates will be:

(a) 85% of NOLV of Eligible A/R;

(b) 85% of NOLV of Eligible Inventory; and

(c) 85% of NOLV of Eligible In-Transit L/C backed Inventory.

Typical reserves similar to the current Borrowing Base for bad debts, aging, returns and defective merchandise, gift certificates, etc. will be included in the Borrowing Base.

**Arrangement and Commitment Fee:** Per the terms of the DIP Facility.

**Letter of Credit Fees:** The "Libor Rate" published in the Wall Street Journal plus the applicable rate of 8.5% per annum, payable monthly in arrears.

**Monitoring Fee:** $65,000 fully earned by, and payable to, the Agent for the benefit of the Agent, at closing.

**Unused Line Fee:** 0.5% annually of the amount of the unused portion of the Facility shall be payable monthly.

| | |
|---|---|
| **Current Pay Interest:** | The "Libor" rate published in the Wall Street Journal plus 8.50% per annum, payable monthly in arrears. |
| **Prepayment Fee:** | 3% of the Commitments if the Commitments are terminated prior to one year from the Closing Date, provided, that, with respect to DIP Lenders that participate in the Exit Facility, the prepayment fee to the extent payable to such participating Lenders and due under the DIP Facility shall be deemed waived upon closing and funding of the Exit Facility and the indefeasible payment in full of the DIP Facility. |
| **Default Pricing:** | After the occurrence and during the continuation of an Event of Default, interest and letter of credit fees shall be increased by an additional 2.0% per annum. |
| **Cash Control:** | Consistent with the terms of the DIP Facility, the Borrower shall continue to maintain, through the term of the Facility, a segregated, blocked account with control agreements in place with Crystal Financial LLC (the "Blocked Account"). |
| **Prepayments:** | Voluntary and mandatory prepayments to be substantially similar to those in the Prepetition Credit Agreement. |
| **Representations and Warranties:** | Substantially similar to the representations and warranties in the Prepetition Credit Agreement and other representations and warranties customary for financings of this type. |
| **Affirmative Covenants:** | Substantially similar to the affirmative covenants in the Prepetition Credit Agreement and other affirmative covenants customary for financings of this type. |
| **Negative Covenants:** | Substantially similar to the negative covenants in the Prepetition Credit Agreement and other negative covenants customary for financings of this type. |
| **Financial Covenants:** | None |
| **Events of Default:** | Substantially similar to the events of default in the Prepetition Credit Agreement and customary for financings of this type. The Agent may, in its sole discretion, waive, or extend the time for performance of any events which would constitute, any Event of Default under the Facility. |
| **Termination:** | Upon the occurrence of an Event of Default, Agent may terminate the Facility declare the obligations in respect of the Facility to be immediately due and payable and exercise all rights and remedies provided for hereunder |
| **Sponsor Credit Support:** | On or before the Closing Date, the Agent shall have received from [_____] (the "Equity Sponsor") a standby letter of credit, naming the Agent as sole beneficiary, in the face amount, or cash collateral in the initial amount, of $5,000,000. The |

3

|   |   |
|---|---|
| | Sponsor Credit Support shall be in effect on the Closing Date and shall remain in effect until 30 days after Maturity. |
| **Conditions Precedent**: | Closing shall be conditioned upon satisfaction of conditions precedent substantially similar to the conditions precedent in the Prepetition Credit Agreement and other conditions customary to transactions of this type, or reasonably required by the Agent, including, without limitation: |

(a) Execution and delivery by Loan Parties of a loan agreement and all other documentation in respect of the Facility required hereunder or thereunder, satisfactory in all respects to Agent.

(b) The Agent shall have received (i) reasonable and customary opinions of counsel to the Loan Parties as to the transactions contemplated hereby which opinions are satisfactory to the Agent and (ii) such corporate resolutions, certificates and other documents as the Agent shall reasonably request.

(c) Liens on all of the Loan Parties' collateral shall have been perfected to the satisfaction of the Agent.

(d) All necessary consents and approvals to the financing shall all have been obtained.

(e) No material misstatements in or omissions from the materials previously furnished to the Agent for its review and Agent must be satisfied that any business plan delivered to it fairly present the business and financial condition of the Loan Parties.

(f) The Agent is satisfied with the form and substance of the plan of reorganization (the "Confirmed Plan of Reorganization"), including, without limitation, the amount of equity contribution to be made on the Effective Date (defined below) and the business plan/projections supporting such plan.

(g) The Confirmed Plan of Reorganization shall have been confirmed by a final order of the Bankruptcy Court, which order shall be in form and substance acceptable to the Agent in its reasonable discretion and shall not be subject to any appeal or motion for reconsideration.

(h) The Confirmed Plan of Reorganization shall become effective and in full force and effect (the "Effective Date")

(i) As of the Closing Date, the Loan Parties shall have excess Availability of at least $15 million, net of all

4

payments required to be made under the Confirmed Plan of Reorganization as of the Effective Date, including, without limitation, any and all claims of the kind specified in Sections 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), and 507(a)(7) of the Bankruptcy Code (whether or not payment is deferred pursuant to Section 1129(9)(B)(i) of the Bankruptcy Code).

(j) There shall have been no material adverse change in the operations, assets, business, revenues, financial condition, profits or prospects of any Loan Party since the date of the most recent financial information delivered to the Agent other than those changes occurring as a result of the implementation of the Confirmed Plan of Reorganization.

(k) No material changes in governmental regulations or policies affecting the Loan Parties or Agent involved in this transaction occur prior to the Closing Date.

(l) The terms and provisions of the Exit Facility shall not in any way contravene that certain Intercreditor Agreement, as amended and restated on December 18, 2009, by and among Borrower, Loehmann's Capital Corp. as issuer and General Electric Capital Corporation as revolving facility agent (the "Intercreditor Agreement"), to the extent that the Intercreditor Agreement remains in effect as of the Effective Date.

(n) Such other conditions as may be required by Agent and are customary in the context of this type of financing.

On-Going Conditions:

The making of each advance under the Facility shall be conditioned upon:

(a) The continuing accuracy of all representations and warranties contained herein.

(b) There being no default or Event of Default in existence at the time of or after giving effect to the making of loans under the Facility.

(c) Such other conditions as may be required by Agent and are customary in the context of this type of financing.

**Expenses:** Borrower shall pay all reasonable expenses of the Agent on similar terms as are set forth in the documentation governing the Prepetition Credit Agreement.

5

| | |
|---|---|
| **Syndication:** | Agent will have the right, but not the obligation, to syndicate the Facility subject to assignment provisions to be mutually agreed; provided such syndication shall not be a condition to closing and Agent agrees to fund up to the full commitment amount in the event other lenders do not participate in the syndicate. |
| **Governing Law:** | State of New York. |

1819/21798-009 Current/20937805v10 11/01/2010 8:51 pm

Upon execution of this letter, the parties shall proceed to negotiate the Credit Documentation, which shall incorporate the terms and provisions contained in this letter, and such other terms and conditions as the parties agree upon.


Sincerely,
**CRYSTAL FINANCIAL LLC**

By: _____
Name:
Title:


**AGREED & ACCEPTED**

[Reorganized Debtor]

By: _____
Name:
Title:



1819/21798-009 Current/21099125v6