**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------- x
In re:                                        :   Chapter 11
                                              :
LOEHMANN'S HOLDINGS, INC., et al.[1],         :   Case No. 10-16077 (REG)
                                              :   Jointly Administered
                                              :
                               Debtors.:
                                              :
-------------------------------------------------------------- x
```

## FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363 AND 364 AND RULES 2002, 4001 AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (I) AUTHORIZING INCURRENCE BY THE DEBTORS OF POSTPETITION SECURED INDEBTEDNESS WITH PRIORITY OVER ALL SECURED INDEBTEDNESS AND WITH ADMINISTRATIVE SUPERPRIORITY, (II) GRANTING LIENS, (III) AUTHORIZING USE OF CASH COLLATERAL BY THE DEBTORS PURSUANT TO 11 U.S.C. § 363 AND PROVIDING FOR ADEQUATE PROTECTION, AND (IV) MODIFYING THE AUTOMATIC STAY

Upon the motion dated November 15, 2010 and the supplements to the motion

dated November 29, 2010 and December 8, 2010 [*Docket Nos. 20, 104 & 149*] (collectively,

the "**DIP Motion**") by Loehmann's Operating Co. and its affiliated debtor entities,

Loehmann's Holdings, Inc., Loehmann's Inc., and Loehmann's Real Estate Holdings,

Inc. (collectively, the "**Debtors**")[2], as debtors and debtors-in-possession in the above

captioned jointly administered chapter 11 cases (collectively, the "**Cases**"), seeking,

among other things, entry of an order (this "**Final Order**"):

(i)     Authorizing the Debtors to obtain credit and incur debt, pursuant

to Sections 363, 364(c) and 364(d) of the Bankruptcy Code up to the aggregate

---

[1]     The Debtors, together with the last four digits of each Debtor's federal tax identification number, are Loehmann's Operating Co. (6681); Loehmann's Holdings, Inc. (9380); Loehmann's Inc. (1356); Loehmann's Real Estate Holdings, Inc. (6682) and Loehmann's Capital Corp. (2694).

[2]     For the avoidance of doubt, the term Debtors as used in this Final Order shall not include

committed amount of $40,000,000 (on terms and conditions more fully described herein), secured by first priority, valid, priming, perfected and enforceable liens (as defined in section 101(37) of chapter 11 of title 11 of the United States Code, as amended (the "**Bankruptcy Code**") on property of the Debtors' estates pursuant to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code, and with priority, as to administrative expenses, as provided in section 364(c)(1) of the Bankruptcy Code, subject to the terms and conditions contained herein;

(ii)      (a) Establishing that financing arrangement (the "**DIP Facility**") pursuant to (I) that certain Amended and Restated Debtor-In-Possession Credit Agreement (the "**DIP Credit Agreement**")[3], substantially in the form filed of record in the Cases, by and among Loehmann's Operating Co. (the "**Borrower**"), Loehmann's Holdings, Inc., Loehmann's Inc., and Loehmann's Real Estate Holdings, Inc. (collectively, the "**Guarantors**"), Crystal Financial LLC, as agent for all DIP Lenders (defined below) (the "**DIP Agent**"), and Whippoorwill Associates, Inc. ("Whippoorwill"), as special representative for certain of its discretionary funds and accounts listed on Schedule 1.1(a), Part II to the DIP Credit Agreement (such funds and accounts the "**Tranche B Lenders**"), the other Lenders thereto (the "**Tranche A Lenders**" and, together with the Tranche B Lenders the "**DIP Lenders,**" collectively with the DIP Agent and Whippoorwill, the "**DIP Secured Parties**"), and (II) all other agreements, documents, and instruments executed and/or delivered with, to, or in

---

Loehmann's Capital Corp.
[3] Capitalized terms used in this Order but not defined herein shall have the meanings ascribed to such terms in the DIP Credit Agreement.

favor of the DIP Secured Parties pursuant to authority granted by this Court, including, without limitation, the guaranty and security agreement(s), any mortgages, the credit card acknowledgments, each control agreement, and all other security agreements, pledge agreements, patent and trademark security agreements, lease assignments, guarantees and other similar agreements, and all amendments, restatements, modifications or supplements thereto, by or between any one or more of any of the Guarantors or Borrowers, and any DIP Secured Parties and all other related agreements, documents, and instruments executed and/or delivered in connection therewith or related thereto (collectively, as may be amended, modified or supplemented and in effect from time to time, the "**DIP Financing Agreements**"); and (b) incur the "**Obligations**" under and as defined in the DIP Credit Agreement (collectively, the "**DIP Obligations**");

(iii)    Authorizing the use of the proceeds of the DIP Facility (net of any amounts used to pay fees under the DIP Financing Agreements) in each case in a manner consistent with the terms and conditions of the DIP Financing Agreements as described in more detail below;

(iv)    Providing that all unfunded Prepetition letters of credit issued under the Prepetition Credit Agreement (as defined below) by or on behalf of the Prepetition Lenders shall be deemed issued under the DIP Credit Agreement;

(v)    Granting a secured, first-priority senior perfected Lien on all present and after-acquired assets and property of the Debtors not subject to a valid, properly perfected, unavoidable Lien on the Petition Date, pursuant to section 364(c)(2)

of the Bankruptcy Code, Avoidance Actions and proceeds of Avoidance Actions, subject to the Carve-Out (as defined below);

(vi)    Granting a secured, first-priority, senior priming perfected Lien on all property of the Debtors that is subject to a valid, properly perfected, unavoidable and senior lien on the Petition Date, including, without limitation, the Liens of the Prepetition Agent (as defined below) on behalf of the Prepetition Lenders (as defined below), pursuant to section 364(d)(1) of the Bankruptcy Code, other than Lease Priority Collateral and Avoidance Actions and proceeds of Avoidance Actions, subject only to the Carve-Out;

(vii)   Granting a Lien on the Lease Priority Collateral, subject only to (a) the Liens of Loehmann's Capital Corp., existing as of the Petition Date pursuant to section 364(c)(3) of the Bankruptcy Code, and (b) the Carve-Out;

(viii)  Granting to the DIP Agent (for the benefit of the DIP Secured Parties) superpriority administrative claim status in respect of all DIP Obligations, pursuant to section 364(c)(1) of the Bankruptcy Code, subject only to the Carve Out as provided herein;

(ix)    Authorizing the use of "cash collateral" of the Debtors as such term is defined in Section 363 of the Bankruptcy Code (the "**Cash Collateral**") in which the Prepetition Secured Parties (as defined below) have an interest;

(x)     Granting the Prepetition Agent (for the benefit of the Prepetition Lenders) Prepetition Replacement Liens and Prepetition Superpriority Claims (each as defined below) to the extent of any diminution in the value of the Prepetition Agent's

interest in the Prepetition Collateral (as defined below) and requiring the Debtors to make Adequate Protection Payments (as defined below) to the Prepetition Secured Parties as adequate protection for the granting of the DIP Liens (as defined below) to the DIP Agent, subordination to the Carve Out, the use of Cash Collateral, and for the imposition of the automatic stay;

       (xi)    Vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Financing Agreements and this Final Order; and

       (xii)    Waiving any applicable stay as provided in the provisions of the Federal Rules of Bankruptcy Procedure and provide for immediate effectiveness of this Final Order.

An interim hearing having been held by the Bankruptcy Court on November 15, 2010 (the "**Interim Hearing**"), and the Bankruptcy Court having entered an interim order dated November 16, 2010 [*Docket No. 55*] (as supplemented by stipulations dated November 18, 2010 and November 19, 2010 [*Docket Nos. 67 & 76*], the "**Interim Order**"), that among other things, scheduled a final hearing (the "**Final Hearing**") to consider entry of this Final Order authorizing borrowings under the DIP Facility on a final basis, as set forth in the DIP Motion and the DIP Financing Agreements. Due and appropriate notice of the DIP Motion, the final relief requested herein and the Final Hearing, as well as the Interim Order, having been served and in accordance with Rules 2002, 4001(b), (c), and (d), and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the local rules of the Bankruptcy Court for the Southern District of New

York; a Final Hearing having been held and concluded; and it appearing that approval of the relief requested in the DIP Motion is fair and reasonable and in the best interests of the Debtors, their creditors and their estates, and is essential for the continued operation of the Debtors' business; and it further appearing that the Debtors are unable to secure unsecured credit for money borrowed allowable as an administrative expense under Bankruptcy Code section 503(b)(1); and there is adequate protection of the interests of holders of liens on the property of the estates on which liens are to be granted; and all objections, if any, to the entry of this Final Order having been withdrawn, resolved or overruled by this Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**IT IS HEREBY FOUND:**

A. **Petition Date**. On November 15, 2010 (the "**Petition Date**"), the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York. The Debtors continue in the management and operation of their business and property as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. Pursuant to an order of this Court, the Cases have been consolidated for procedural purposes only and are being jointly administered. No trustee or examiner has been appointed in the Cases.

B. **Jurisdiction and Venue**. This Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. §§ 157(b) and 1334, and over the persons and property affected hereby. Consideration of the DIP Motion constitutes a core

proceeding under 28 U.S.C. § 157(b)(2). Venue for the Cases and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C. **Committee Formation**. A statutory committee of unsecured creditors (the "Committee") was appointed in these Cases on November 23, 2010.

D. **Notice**. The Final Hearing is being held pursuant to the authorization of Bankruptcy Rule 4001 and Local Rule 4001-2. Adequate and sufficient notice of the Final Hearing and the relief requested in the DIP Motion has been provided by the Debtors, whether by telecopy, email, overnight courier or hand delivery to certain parties in interest, including: (i) the Office of the United States Trustee for the Southern District of New York, (ii) counsel for the Committee, (ii) counsel to the Prepetition Agent (as defined below), (iii) counsel to the DIP Agent, (iv) all known parties asserting a lien against the collateral; (v) the Internal Revenue Service; (vi) the Securities and Exchange Commission; and (vii) all parties requesting notice pursuant to Bankruptcy Rule 2002. Under the circumstances, such notice of the Final Hearing and the relief requested in the DIP Motion complies with sections 102(1), 364(c) and 364(d) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(c), 4001(d) and the local rules of the Bankruptcy Court for the Southern District of New York.

E. **Debtors' Acknowledgements and Agreements**. Without prejudice to the rights of parties in interest as set forth in paragraph 6-8 below, the Debtors admit, stipulate, acknowledge and agree that (collectively, paragraphs E (i) through E (v) hereof shall be referred to herein as the "**Debtors' Stipulations**"):

**(i)** **Prepetition Credit Agreement**. Prior to the commencement of the Cases, Loehmann's Operating Co. as borrower, and Loehmann's Holdings Inc.,

7

Loehmann's, Inc. and Loehmann's Real Estate Holdings, Inc. as "**guarantors**" (collectively, the "**Prepetition Credit Parties**"), were parties to (A) that certain credit agreement, dated as of September 15, 2010, with Crystal Financial LLC, as lender and administrative agent for all lenders (the "**Prepetition Agent**"), and the lender parties thereto (the "**Prepetition Lenders**", collectively with the Prepetition Agent, the "**Prepetition Secured Parties**"), and (B) all other agreements, documents, and instruments executed and/or delivered with, to, or in favor of Prepetition Secured Parties, including, without limitation, the revolving loan note, the guaranty and security agreement, any mortgages, the credit card acknowledgments, each control agreement, and all other security agreements, pledge agreements, patent and trademark security agreements, lease assignments, financing statements, guarantees, Uniform Commercial Code ("**UCC**") financing statements, management fee subordination agreement, and other similar agreements, and supplements, by or between any one or more of the Prepetition Credit Parties, and any Prepetition Lenders or Prepetition Agent for the benefit of the Prepetition Agent and the Prepetition Lenders delivered to the Prepetition Lenders or the Prepetition Agent pursuant to or in connection with the transactions contemplated by the Prepetition Credit Agreement, as any of the foregoing may be amended, restated and/or modified from time to time(collectively, as may be amended, modified or supplemented and in effect from time to time, collectively, the "**Prepetition Credit Agreement**").

**(ii)** <u>**Prepetition Debt Amount**</u>. As of the Petition Date, the Borrowers were indebted under (i) the Prepetition Credit Agreement in the principal amount of $31,424,559.49, plus letters of credit, plus interest accrued and accruing, costs, expenses, fees due and owing thereunder. For purposes of this Final Order, the term "**Prepetition Obligations**" shall mean and include, without duplication, any and all amounts owing or outstanding under the Prepetition Credit Agreement (including, without limitation, all "**Obligations**" as defined in the Prepetition Credit Agreement and, for the avoidance of doubt, any Term Loan or obligation owed or owing in respect of any Term Loan), and all interest on, fees and other costs, expenses and charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees and expenses that are chargeable or reimbursable under the applicable provisions of the Prepetition Credit Agreement), and any and all obligations and liabilities, contingent or otherwise, owed with respect to the existing letters of credit or other obligations outstanding thereunder.

**(iii)** <u>**Prepetition Collateral**</u>. To secure the Prepetition Obligations, the Prepetition Credit Parties granted security interests and liens (the "**Prepetition Liens**") to the Prepetition Secured Parties upon substantially all of the Prepetition Credit Parties' personal property, including, without limitation, all accounts, chattel paper (whether tangible or electronic), deposit accounts, goods, documents (as defined in the UCC), general intangibles (including all payment intangibles, all contract rights or rights to the payment of money, insurance

claims and proceeds), instruments, inventory, investment property, securities, fixtures, letter of credit rights (whether tangible or electronic), any supporting obligations related to any of the foregoing, and the books and records pertaining to any of the foregoing, and the proceeds and products, whether tangible or intangible, of any of the foregoing collateral (collectively, the "**Prepetition Collateral**"), with priority over all other liens except those liens otherwise permitted by the Prepetition Credit Agreement (the "**Permitted Prior Liens**"). For the avoidance of doubt, Prepetition Collateral does not include inventory furnished to the Debtors pursuant to a valid consignment agreement under applicable non-bankruptcy law by Scents of Worth, Inc. (the "**Consigned Goods**").

**(iv)** <u>**Prepetition Liens**</u>. (a) As of the Petition Date, (i) the Prepetition Liens are valid, binding, enforceable, and perfected first-priority liens, subject only to any Permitted Prior Liens and are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (ii) the Prepetition Obligations constitute legal, valid and binding obligations of the Debtors, enforceable in accordance with the terms of the Prepetition Credit Agreement (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and are not subject to any objection, offset, defense or counterclaim of any kind, and no portion of the Prepetition Obligations is subject to avoidance, disallowance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (iii) the Prepetition Obligations constitute allowed secured claims pursuant to section 506 of the Bankruptcy Code, and (b) on the date that this Final Order is entered, each Debtor has waived, discharged and released the Prepetition Secured Parties, together with their affiliates, agents, attorneys, officers, directors and employees, of any right any Debtor may have (x) to challenge or object to any of the Prepetition Obligations, (y) to challenge or object to the security for the Prepetition Obligations, and (z) to bring or pursue any and all claims, objections, challenges, causes of action and/or choses in action arising out of, based upon or related to the Prepetition Credit Agreement or otherwise.

The Debtors do not possess and will not assert any claim, counterclaim, setoff, objection, challenge, cause of action or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Prepetition Credit Agreement or the Prepetition Liens, or any claim of the Prepetition Secured Parties and/or any of their respective affiliates, parents, subsidiaries, agents, attorneys, advisors, professionals, officers, directors and employees (in their respective capacities as such) pursuant to the Prepetition Credit Agreement.

**(v)** <u>**Cash Collateral**</u>. The Prepetition Secured Parties have a security interest in Cash Collateral of the Debtors (other than Loehmann's Capital Corp.), including all amounts on deposit in the borrower's banking, checking, or other

deposit accounts and all proceeds of Prepetition Collateral to secure the Prepetition Obligations, respectively, to the same extent and order of priority as that which was held by each such party Prepetition.

F.     **Findings Regarding the Post-Petition Financing**.

(i)     **Need for Post-Petition Financing**.  An immediate need exists for the Debtors to obtain funds from the DIP Facility in order to continue operations and to administer and preserve the value of their estates.  The ability of the Debtors to finance their operations, to preserve and maintain the value of the Debtors' assets and maximize a return for all creditors requires the availability of working capital from the DIP Facility, the absence of which would immediately and irreparably harm the Debtors, their estates and their creditors and the possibility for a successful reorganization or sale of the Debtors' assets as a going concern or otherwise.

(ii)     **No Credit Available on More Favorable Terms**.  The Debtors have been unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense.  The Debtors are also unable to obtain secured credit pursuant to Bankruptcy Code sections 364(c)(2), 364(c)(3), and 364(d) on more favorable terms and conditions than those provided in the DIP Financing Agreements and this Final Order.  The Debtors are unable to obtain credit for borrowed money without (a) granting to the DIP Secured Parties the DIP Protections (as defined below), and (b) allowing the Prepetition Lenders to consummate a roll-up of the Prepetition Credit Agreement into the DIP Facility, Loehmann's Capital Corp. which is a party to that certain Amended and Restated Intercreditor Agreement, as same may be amended,

has consented to the terms of the financing pursuant to the DIP Credit Agreement and this Final Order.

G. **Section 506(c) Waiver**.  The DIP Secured Parties and the Prepetition Secured Parties will require a waiver of the provisions of sections 506(c) of the Bankruptcy Code as part of the DIP Facility.

H. **Use of Proceeds of the DIP Facility**.  Proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses under the DIP Financing Agreements) shall be used, in each case in a manner consistent with the terms and conditions of the DIP Credit Agreement.  The proceeds of the Tranche A Revolving Loans shall be used in accordance with the Budget (as defined below), as follows (a) solely for (x) working capital and other general corporate purposes including, without limitation, payment for essential vendors, including warehouseman and freight handlers, as approved by the DIP Agent and (y) payment of costs of administration of the Cases, to the extent set forth in the Budget, and (b) upon entry of the this Final Order, payment in full of the Prepetition Obligations; provided, however, that subject to the terms of the DIP Credit Agreement, the proceeds of the Tranche A Revolving Loans shall not be used to purchase Inventory (other than pursuant to the issuance of Letters of Credit) unless the Tranche B Revolving Loans have been fully drawn and remain outstanding.  The proceeds of the Tranche B Revolving Loans (net of any fees, costs or expenses, including attorney's fees of Whippoorwill and the Tranche B Lenders payable therefrom as of the Effective Date) shall be used solely to purchase Inventory and to pay Attorney Costs of the Tranche B Lenders and Whippoorwill, as provided in the DIP

Credit Agreement. For the avoidance of doubt, the commitment fee provided to the Agent in the DIP Credit Agreement shall be deemed earned and payable as follows: (i) $250,000 upon entry of the Interim Order; and (ii) $250,000 upon entry of this Final Order. The commitment fee provided to the Tranche B Lenders shall be fully earned and payable on the Effective Date.

I. **Application of Proceeds of DIP Collateral**. So long as no Event of Default has occurred, all proceeds of a sale or other disposition of the DIP Collateral (as defined below) shall be applied: (a) first, to reduce the DIP Obligations pursuant and subject to the provisions of the DIP Credit Agreement (b) second, until the implementation of the Roll Up (as defined below), to reduce the Prepetition Obligations.

J. **Adequate Protection for Prepetition Secured Parties**. As a result of the automatic stay, the Debtors' use, sale or lease of the Prepetition Collateral (including Cash Collateral) during the Cases, the grant of the DIP Liens, subordination to the Carve Out authorized herein, the Prepetition Secured Parties are entitled to receive adequate protection pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code for any decrease in the value of their respective interest in the Prepetition Collateral (including Cash Collateral). As adequate protection, the Prepetition Agent (for the benefit of the Prepetition Secured Parties) will receive: (1) the Prepetition Replacement Liens, (2) the Prepetition Superpriority Claim, (3) the Adequate Protection Payments (as defined below), and (4) until the implementation of the Roll Up, the reduction of Prepetition Obligations as provided in paragraph 2(c) hereof. The consent of the

Prepetition Agent and Prepetition Lenders granted herein is expressly limited to: (i) the Debtors' use of Cash Collateral solely on the terms and conditions set forth in this Final Order; and (ii) the postpetition financing being provided by the DIP Agent and DIP Lenders as contemplated by this Final Order and the DIP Financing Agreements. Nothing in this Final Order, including, without limitation, any of the provisions herein with respect to adequate protection, shall constitute, or be deemed to constitute, a finding that the interests of the Prepetition Agent and Prepetition Lenders are or will be adequately protected with respect to any non-consensual use of Cash Collateral or priming of the Prepetition Liens.

K. **Section 552**. In light of their agreement to subordinate their liens and superpriority claims (i) to the Carve-Out in the case of the DIP Secured Parties, and (ii) to the Carve-Out and the DIP Liens in the case of the Prepetition Secured Parties, the DIP Secured Parties and the Prepetition Secured Parties are each entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception shall not apply with respect to the Prepetition Liens of the Prepetition Secured Parties or the DIP Liens of the DIP Secured Parties.

L. **Extension of Financing**. The DIP Secured Parties have indicated a willingness to provide financing to the Debtors in accordance with the DIP Credit Agreement and subject to (i) the entry of this Final Order, and (ii) findings by the Bankruptcy Court that such financing is essential to the Debtors' estate, that the DIP Secured Parties are good faith financiers, and that the DIP Secured Parties' claims, superpriority claims, security interests and liens and other protections granted pursuant

to this Final Order and the DIP Facility will not be affected by any subsequent reversal or modification of the Final Order unless the Final Order was stayed pending appeal, as provided in section 364(e) of the Bankruptcy Code.

M. **Business Judgment and Good Faith Pursuant to Section 364(e)**. The terms and conditions of the DIP Facility and the DIP Credit Agreement, and the fees paid and to be paid thereunder are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration; (ii) the DIP Facility was negotiated in good faith and at arms' length between the Debtors and the DIP Secured Parties, and (iii) use of the proceeds to be extended under the DIP Facility will be so extended in good faith, and for valid business purposes and uses, as a consequence of which the DIP Secured Parties are entitled to the protection and benefits of section 364(e) of the Bankruptcy Code.

N. **DIP Sponsor Credit Support**. The Debtors have shown good business reasons for causing the Equity Sponsor to provide the DIP Sponsor Credit Support. The DIP Sponsor Credit Support and the terms relating thereto set forth in Sections 2.1 and 4.15 of the DIP Credit Agreement, including without limitation, the Sponsor Participation Agreement, are necessary conditions to the effectiveness of the DIP Financing Agreements and this Final Order. Absent the DIP Sponsor Credit Support, the DIP Lenders would have been unwilling to provide the DIP Facility to the Debtors.

O. **Relief Essential; Best Interest; Good Cause**. The relief requested in the DIP Motion is necessary, essential, and appropriate for the continued operation of the

Debtors' business and the management and preservation of the Debtors' assets and personal property. It is in the best interest of the Debtors' estates to be allowed to establish the DIP Facility contemplated by the DIP Credit Agreement. Good cause has been shown for the relief requested in the DIP Motion (and as provided in this Final Order).

P.  **Entry of Final Order**.  For the reasons stated above, the Debtor has requested immediate entry of this Final Order pursuant to Bankruptcy Rule 4001(c)(2).

**NOW, THEREFORE,** based upon the DIP Motion and the record before this Court with respect to the DIP Motion made at the Interim Hearing and the Final Hearing, and with the consent of the Debtors, the Prepetition Secured Parties and the DIP Secured Parties [and the Committee] to the form and entry of this Final Order, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

1.  **Motion Granted**.  The DIP Motion is granted in accordance with the terms and conditions set forth in this Final Order and the DIP Credit Agreement.

2.  **DIP Financing Agreements**.

(a)  **Approval of Entry into DIP Financing Agreements**.  The Debtors are expressly and immediately authorized, empowered and directed to execute and deliver the DIP Financing Agreements and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Order and the DIP Financing Agreements, and to execute and deliver all instruments and documents which may be required or necessary for the performance by the Debtors under the DIP Facility and the

creation and perfection of the DIP Liens described in and provided for by this Interim Order and the DIP Financing Agreements. Upon execution and delivery, the DIP Financing Agreements shall represent valid and binding obligations of the Debtors enforceable against the Debtors in accordance with their terms.

(b) **Authorization to Pay Fees and Expenses**. The Debtors are hereby authorized and directed to do and perform all acts, pay the principal, interest, fees, expenses and other amounts described in the DIP Credit Agreement and all other DIP Financing Agreements as such become due, including, without limitation, closing fees, administrative fees, commitment fees, letter of credit fees and reasonable attorneys', financial advisors' and accountants' fees and disbursements as provided for in the DIP Credit Agreement which amounts shall not otherwise be subject to approval of this Court or required to be maintained in accordance with the United States Trustee Guidelines; provided, however, that the DIP Agent or DIP Lenders shall deliver copies of professional fee and expense invoices to the Office of the United States Trustee and the Committee at the same time such invoices are forwarded to the Debtors, the Debtors shall promptly reimburse the DIP Agent and DIP Lenders within fifteen (15) business days (if no written objection is received within such fifteen (15) business-day period) after such professional has delivered a summary invoice describing such fees and expenses. Any written objection to such fees and expenses must contain a specific basis for the objection and a quantification of the undisputed amount of the fees and expenses invoiced. The fees incurred by the DIP Agent and the DIP Lenders in connection with this case, the preparation of the DIP Credit Agreement, the DIP

Financing Agreements and the Interim Order and this Final Order (and any amendments and/or supplements related thereto) shall be paid upon close of the DIP Facility. The Court shall have jurisdiction to determine any dispute concerning such invoices, however, if an objection to a professional's invoice is timely received, the Debtors shall only be required to timely pay the undisputed amount of the invoice and the Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute. ~~Notwithstanding the foregoing, the Prepetition Agent and the Prepetition Lenders reserve their rights to seek allowance and payment of the prepayment fee provided in the Prepetition Credit Agreement, less any amounts received under the post-petition DIP Credit Agreement.~~

(c)     **Authorization to Borrow**.  In order to enable them to continue to operate their business, and subject to the terms and conditions of this Final Order, upon the execution of the DIP Credit Agreement and the other DIP Financing Agreements, the Debtors are hereby authorized to borrow up to a total committed amount of $40,000,000 under the DIP Facility (including the issuance of letters of credit), subject to the terms and conditions set forth in the DIP Credit Agreement, comprised of (a) revolving loans from the Tranche A Lenders in an amount of up to $33 million (the "**Tranche A Revolving Loans**") and (b) revolving loans from the Tranche B Lenders in an amount of up to $7,000,000 (the "**Tranche B Revolving Loans**") to be used solely to purchase Inventory as provided in the DIP Credit Agreement and to pay the fees, costs or expenses, including attorney's fees of Whippoorwill and the Tranche B Lenders. Upon entry of this Final Order, all Prepetition unfunded letters of credit issued under

the Prepetition Credit Agreement shall be deemed issued under the DIP Credit Agreement.

(d)      **Application of DIP Proceeds and Collections**.  The proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses under the DIP Credit Agreement) shall be used, in each case in a manner consistent with the terms and conditions of the DIP Financing Agreements.  The proceeds of the Tranche A Revolving Loans shall be used in accordance with the Budget (as defined below), as follows (a)  for (x) working capital and other general corporate purposes including, without limitation, payment for essential vendors, including warehouseman and freight handlers, as approved by the DIP Agent and (y) payment of costs of administration of the Cases, to the extent set forth in the Budget, and (b) for payment of the Roll Up, so long as no Event of Default has occurred, until the Roll Up is implemented; provided, however, that the proceeds of the Tranche A Revolving Loans shall not be used to purchase Inventory (other than pursuant to the issuance of Letters of Credit) unless the Tranche B Revolving Loans have been fully drawn and remain outstanding.  Until the Roll UP is implemented, the DIP Agent may apply any and all payments received by Agent in respect of any Prepetition Obligations first to reduce the Obligations pursuant to the terms of the DIP Credit Agreement and second to repay the Prepetition Obligations. During the continuance of an Event of Default, the DIP Agent may apply any and all payments received by Agent in accordance with the DIP Credit Agreement.  The proceeds of the Tranche B Revolving Loans (net of any fees, costs or expenses, including attorney's fees of Whippoorwill and the Tranche B Lenders payable therefrom as of the

Effective Date) shall be used solely to purchase Inventory and to pay Attorney Costs of the Tranche B Lenders, on the terms and conditions set forth in the DIP Credit Agreement.

(e)  **Conditions Precedent**.  The DIP Secured Parties shall have no obligation to make any loan or advance under the DIP Credit Agreement unless the conditions precedent to make such loan under the DIP Credit Agreement have been satisfied in full or waived by the applicable DIP Secured Parties in their sole discretion.

(f)  **Post-Petition Liens**.  Effective immediately upon the execution this Final Order, the DIP Secured Parties are hereby granted the following postpetition security interests and liens (collectively, the "**DIP Liens**") upon the collateral described below (collectively, the "**DIP Collateral**"):

(i)  Pursuant to sections 364(d)(1) of the Bankruptcy Code, priming first priority, continuing, valid, binding, enforceable, non-avoidable and automatically perfected postpetition security interests and liens, senior and superior in priority to all other secured and unsecured creditors of the Debtors' estates except as otherwise provided in this Final Order and the DIP Credit Agreement, upon on all prepetition and postpetition property and assets of the Debtors, whether real or personal, tangible or intangible, and wherever located, and whether now existing or hereafter acquired, including proceeds, products, offspring, rents, proceeds of interests in leaseholds (but not the interests in the leaseholds directly) and profits thereof, subject only to the Carve-Out, and the Liens of Loehmann's Capital Corp. on the Lease Priority Collateral to the extent that such Liens are valid, binding, enforceable, non-avoidable

and automatically perfected postpetition; provided, however, the DIP Collateral shall not include, and the DIP Lien shall not encumber, the Debtors' or their estates' claims and causes of action (i) under chapter 5 of the Bankruptcy Code or (ii) against the Debtors' directors or officers or any applicable insurance with respect thereto or (iii) that are the subject of a Challenge (as defined below) or (iv) in the nature of derivative actions (collectively, the "Avoidance Actions") and the proceeds of Avoidance Actions.

(ii)    Pursuant to section 364(c)(2) of the Bankruptcy Code, first priority, continuing, valid, binding, enforceable, non-avoidable and automatically perfected postpetition security interests and liens upon all property and assets of the Debtors, whether real or personal, tangible or intangible, and wherever located, and whether now existing or hereafter acquired, including proceeds, products, offspring, rents, proceeds of interests in leaseholds (but not the interests in the leaseholds directly) and profits thereof that is not otherwise subject to a lien on the Petition Date, subject only to the Carve-Out, but not including any Avoidance Actions or the proceeds of Avoidance Actions.

(iii)    Pursuant to section 364(c)(3) of the Bankruptcy Code, second priority, continuing, valid, binding, enforceable, non-avoidable and automatically perfected postpetition security interests, subject only to the Carve-Out and the Liens of Loehmann's Capital Corp. on the Lease Priority Collateral to the extent that such Liens are valid, binding, enforceable, and non-avoidable, but not including any Avoidance Actions and the proceeds of Avoidance Actions.  For the avoidance of doubt, the DIP

Collateral shall not include the Consigned Goods or a direct lien on the Debtors' leasehold interests, only the proceeds thereof.

(g) **DIP Lien Priority**. The DIP Liens shall not be made subject to or pari passu with any lien or security interest by any court order heretofore or hereafter entered in the Cases and shall be valid and enforceable against any trustee appointed in the Cases, upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (any "**Successor Cases**"), and/or upon the dismissal of any of the Cases. The DIP Liens shall not be subject to Sections 510, 549, 550 or 551 of the Bankruptcy Code or Section 506(c) of the Bankruptcy Code.

(h) **Enforceable Obligations**. The DIP Financing Agreements shall constitute and evidence the valid and binding obligations of the Debtors, which obligations shall be enforceable against the Debtors, their estates and any successors thereto and their creditors, in accordance with their terms.

(i) **Protection of DIP Secured Parties and Other Rights**. From and after the Petition Date, the Debtors shall use the proceeds of the extensions of credit under the DIP Facility only for the purposes and on the terms and conditions specifically set forth in the DIP Credit Agreement and this Final Order.

(j) **Superpriority Administrative Claim Status**. Subject to the Carve-Out, all DIP Obligations shall be an allowed superpriority administrative expense claim (the "**DIP Superpriority Claim**" and, together with the DIP Liens, the "**DIP Protections**") with priority in all of the Cases under sections 364(c)(1), 503(b) and 507(b)

of the Bankruptcy Code and otherwise over all administrative expense claims of the kinds specified in, arising, or ordered pursuant to sections 503(b) or 507(b) of the Bankruptcy Code, and Section 506(c) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment. Other than the Carve-Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under Bankruptcy Code sections 328, 330, and 331, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to or on a parity with the DIP Obligations, or with any other claims of the DIP Secured Parties arising hereunder. The DIP Superpriority Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, provided, however, that the DIP Superpriority Claim may not be satisfied: (i) by the Consigned Goods or proceeds arising from the sale or disposition of Consigned Goods, except to the extent that the Debtors are entitled to receive such proceeds; or (ii) from Avoidance Actions and proceeds from Avoidance Actions.

3. **Authorization to Use Cash Collateral and Proceeds of DIP Financing Agreements**. Pursuant to the terms and conditions of this Final Order, the DIP Facility and the DIP Credit Agreement, and for the Tranche A Revolving Loans and in accordance with the budget (as the same may be modified from time to time consistent with the terms of the DIP Credit Agreement, and with the consent of the DIP Agent and DIP Lenders, the "**Budget**"), filed on record in the Cases, the Debtors are authorized to

use the advances under the DIP Credit Agreement during the period commencing immediately after the entry of the this Final Order and terminating upon the occurrence of a DIP Order Event of Default and the termination of the DIP Credit Agreement in accordance with its terms and subject to the provisions hereof.  The Budget may be updated (with the consent and/or at the request of the DIP Agent) from time to time, provided that such updated Budget shall be in form and substance acceptable to the DIP Agent and the Tranche A Lenders, and the Debtors shall be required always to comply with the Budget and the DIP Credit Agreement pursuant to the terms of the DIP Facility.  Nothing in this Final Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business or other proceeds resulting therefrom, except as permitted in the DIP Facility and the DIP Credit Agreement and in accordance with the Budget or as otherwise approved by the Bankruptcy Court.  Notwithstanding anything set forth in this paragraph, the proceeds of the Tranche B Revolving Loans (net of any fees, costs or expenses, including attorney's fees of Whippoorwill and the Tranche B Lenders payable therefrom as of the Effective Date) shall be used solely to purchase Inventory and to pay the Attorney Costs of the Tranche B Lenders and Whippoorwill, subject to the provisions of the DIP Credit Agreement.

4.     **Adequate Protection for Prepetition Secured Parties**.  As adequate protection for the interest of the Prepetition Secured Parties in the Prepetition Collateral (including Cash Collateral) on account of the granting of the DIP Liens, subordination to the Carve-Out, the Debtors' use of Cash Collateral and other decline in value arising

out of the automatic stay or the Debtors' use, sale, or disposition or other depreciation of the Prepetition Collateral, until the Roll Up is implemented, the Prepetition Secured Parties shall receive adequate protection as follows:

(a)    **Prepetition Replacement Liens**.  To the extent of the diminution of the value of the interests of the Prepetition Secured Parties in the Prepetition Collateral, the Prepetition Secured Parties shall have, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code additional and replacement security interests and liens in the DIP Collateral (the "**Prepetition Replacement Liens**") which replacement liens are valid, binding, enforceable and fully perfected as of the Petition Date without the necessity of the execution, filing or recording by the Debtors or the Prepetition Agent of security agreements, pledge agreements, financing statements, or other agreements, which Prepetition Replacements Liens shall be subject and subordinate only to the DIP Liens, any valid, binding, enforceable and non-avoidable Liens permitted under the Prepetition Credit Agreement, the DIP Credit Agreement and/or this Final Order, and the Carve-Out as provided herein and in the DIP Credit Agreement.

(b)    **Prepetition Superpriority Claim**.  To the extent of the diminution of the value of the interests of the Prepetition Secured Parties in the Prepetition Collateral, the Prepetition Secured Parties shall, subject to the Carve-Out, have an allowed superpriority administrative expense claim (the "**Prepetition Superpriority Claim**") which shall have priority (except with respect to the DIP Liens, the DIP Superpriority Claim, and the Carve Out) in all of the Cases under sections 105, 364(c)(1),

503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims against the Debtors and their estates, now existing or hereafter arising, of any kind or nature of the kinds specified in or ordered pursuant to sections 503(b) or 507(b) of the Bankruptcy Code, and Section 506(c) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment. Other than the DIP Liens, the DIP Superpriority Claim, and the Carve Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under Bankruptcy Code sections 328, 330, and 331, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to or on a parity with the Prepetition Superpriority Claim. The Prepetition Superpriority Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, other than the Avoidance Actions and the proceeds of Avoidance Actions.

(c) **Adequate Protection Payment**. The Prepetition Secured Parties shall receive adequate protection in the form of (i) repayment of the principal amount of the Prepetition Obligations, and (ii) until the implementation of the Roll Up, payments in the amount of interest (which shall be payable at the non-default rate under the Prepetition Credit Agreement), reasonable fees, costs, expenses, and other amounts with respect to the Prepetition Obligations in accordance with the Prepetition Credit Agreement (collectively, the "**Adequate Protection Payment**"), solely on account of diminution in value of the Prepetition Collateral. The Adequate Protection Payments

are subject to disgorgement in the event that it is determined that payments authorized hereunder exceed the diminution in value or the Prepetition Secured Parties are not otherwise legally entitled to such amounts.

(d) **Prepetition Indemnity Account**.  Upon written request of the Prepetition Agent, the Debtors and the Post-Petition Agent shall establish an account in the control of the Prepetition Agent (the "**Prepetition Indemnity Account**"), into which the sum of $200,000 shall be deposited as security for any reimbursement, indemnification or similar continuing obligations of the Debtors in favor of the Prepetition Secured Parties under the Prepetition Credit Agreement (the "**Prepetition Indemnity Obligations**"); provided, however, at the Debtors' request, a reserve for the Prepetition Indemnity Obligations will be established by the DIP Agent in lieu of the Prepetition Indemnity Account; provided, further, however, that the Prepetition Indemnity Obligations shall terminate and all remaining amounts held therein shall be released to the Debtors on the date that all Prepetition Obligations have been irrevocably paid in full in cash and the earliest to occur of:  (a) the Challenge Period Termination Date if, as of such date, no party has filed or asserted an adversary proceeding, cause of action, objection, claim, defense, or other challenge as contemplated in paragraph 6-8 hereof, or if such a challenge has been brought, the entry of a final judgment resolving such challenge and (b) the date the Bankruptcy Court enters a final order closing the Cases.  The Prepetition Indemnity Obligations shall be secured by a first priority lien on the Prepetition Indemnity Account or the reserve established by the DIP Agent.

(e) **Adequate Protection Upon Sale of Collateral**.  Upon the sale of any Prepetition Collateral or DIP Collateral pursuant to Section 363 of the Bankruptcy Code, any such Collateral shall be sold free and clear of the DIP Liens, Prepetition Liens and the Prepetition Replacement Liens, provided, however, that such Liens shall attach to the proceeds of any such sale in the order and priority as set forth in this Final Order and the DIP Credit Agreement and shall be paid to the Prepetition Agent or the DIP Agent upon the closing of any such sale if authorized by the Bankruptcy Court in any order approving such sale.

(f) **Right to Credit Bid**.  Prior to implementation of the Roll-Up, the Prepetition Agent (on behalf of the Prepetition Lenders) shall have the right to "**credit bid**" the allowed amount of the Prepetition Lenders' claims during any sale of all or substantially all of the Prepetition Collateral, including without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any reorganization plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code.

5. **Post-Petition Lien Perfection**.

(a) The Interim Order and this Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and the Prepetition Replacement Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control

agreement) to validate or perfect the DIP Liens and the Prepetition Replacement Liens or to entitle the DIP Liens and the Prepetition Replacement Liens to the priorities granted herein. Notwithstanding the foregoing, the DIP Agent and the Prepetition Agent may, each in their sole discretion, file such financing statements, mortgages, notices of liens and other similar documents, and are hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Cases.

(b)     The Debtors shall execute and deliver to the DIP Agent and the Prepetition Agent all such financing statements, mortgages, notices and other documents as the DIP Agent and the Prepetition Agent may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of, the DIP Liens and the Prepetition Replacement Liens granted pursuant hereto. The DIP Agent, in its discretion, may file a photocopy of this Final Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property, and in such event, the recording officer shall be authorized to file or record such copy of this Final Order.

(c)     The DIP Agent and the DIP Lenders shall, in addition to the rights granted to them under the DIP Financing Agreements, be deemed to be the successor in interest to the Prepetition Secured Parties with respect to all third party notifications in connection with the Prepetition Credit Agreement, all Prepetition Collateral access

agreements and all other agreements with third parties (including any agreement with a customs broker or freight forwarder) relating to, or waiving claims against, any Prepetition Collateral, including without limitation, each collateral access agreement duly executed and delivered by any landlord of the Debtors and including, for the avoidance of doubt, all deposit account control agreements and credit card agreements, provided, that the Prepetition Agent shall continue to have all rights pursuant to each of the foregoing.

6. **Reservation of Certain Third Party Rights and Bar of Challenges and Claims**. Nothing in this Final Order or the DIP Credit Agreement shall prejudice the rights the Committee has and the Committee is hereby granted standing to object to or challenge, the (i) validity, extent, perfection or priority of the mortgage, security interests and liens of the Prepetition Secured Parties in and to the Prepetition Collateral, or (ii) the validity, allowability, priority, status or amount of the Prepetition Obligations. If the Committee seeks standing to seek any other relief against the Prepetition Secured Lenders or the Prepetition Secured Parties, the Committee must file a motion seeking standing (with a draft complaint attached thereto), prior to the Challenge Period Termination Date (as defined below). The Committee must commence a contested matter or adversary proceeding raising such objection or challenge, including without limitation, asserting any claim against the Prepetition Secured Parties in the nature of a setoff, counterclaim or defense to the Prepetition Debt (including but not limited to, those under sections 506, 544, 547, 548, 549, 550 and/or 552 of the Bankruptcy Code or by way of suit against any of the Prepetition Secured Parties), within (a) 90 days

following the entry of this Final Order, (b) such later date consented to in writing by the Prepetition Agent, or (c) such longer period as the Court orders for cause shown prior to the expiration of such period (the "**Challenge Period**").  The date that is the next calendar day after the termination of the Challenge Period, in the event that no objection or challenge is raised during the Challenge Period shall be referred to as the "**Challenge Period Termination Date**".  Upon the Challenge Period Termination Date, any and all such challenges, claims, causes of action and objections by any party (including, without limitation, the Committee, any chapter 11 or chapter 7 trustee appointed herein or in any Successor Case, and any other party in interest) shall be deemed to be forever waived and barred, and the Prepetition Obligations shall be deemed to be allowed in full and shall be deemed to be allowed as a secured claim within the meaning of section 506 of the Bankruptcy Code for all purposes in connection with the Cases or any Successor Case, and the Debtors' Stipulations shall be binding on all creditors, interest holders and parties in interest.

7.     To the extent any such objection or complaint is filed, the Prepetition Secured Parties shall be entitled to include their reasonable costs and expenses, including but not limited to reasonable attorneys' fees, incurred in defending the objection or complaint as part of the Prepetition Debt to the extent allowable under Section 506(b) of the Bankruptcy Code.  Notwithstanding anything herein to the contrary, upon entry of this Final Order, only the Committee shall be entitled to bring a Challenge on behalf of the Debtors' estates against the Prepetition Agent or any Prepetition Lender.  No other party in interest shall be entitled to investigate the

validity, amount, perfection, priority, or enforceability of the Prepetition Liens and Prepetition Indebtedness, or to assert any other claims or causes of action held by the Debtors' estates against the Prepetition Agent or any Prepetition Lender. Nothing contained in this Final Order shall limit the Court's ability to fashion an appropriate remedy should the Court determine, by entry of a final and non-appealable order and judgment, a Challenge in favor of the Committee.

8.      Notwithstanding anything to the contrary contained in this Final Order, DIP Credit Agreement or Prepetition Credit Agreement, the Obligations under the Prepetition Credit Agreement shall not be deemed to be satisfied and all indemnity obligations, all reimbursement indemnification or similar Obligations of the Debtors in favor of the Prepetition Secured Parties under the Prepetition Credit Agreement shall remain outstanding until the later of either: (a) the Challenge Period Termination Date; and (b) the date that any objection, cause of action, claim or challenge against the Prepetition Secured Parties or with respect to their Liens on the Prepetition Collateral in any proceeding is determined by a Final Order.

9.      **Carve Out.**

(a)      The DIP Liens, DIP Superpriority Claims, the Prepetition Replacement Liens, and the Prepetition Superpriority Claims are subordinate only to the following (the "**Carve Out**"): (a) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6), together with interest payable thereon pursuant to applicable law and any fees payable to the Clerk of the Bankruptcy Court; (b) until the occurrence and continuation of an Event of Default, allowed reasonable fees and expenses of attorneys,

accountants, financial advisors, consultants and other professionals employed by the Debtors and the Committee pursuant to Sections 327 and 1103 of the Bankruptcy Code, and the reimbursable expenses of Committee members (excluding the fees and expenses of professionals retained by such Committee members individually), provided that Committee counsel ensures that these reimbursement requests comply with the Court's Administrative Orders dated June 24, 1991 and April 21, 1995 as required by General Order M-388 (the "**Case Professionals**"), incurred through and including the date a Carve-Out Notice has been duly received by the Debtors, the Committee and the U.S. Trustee (the "**Carve-Out Notice Effective Date**") initially, as of the Petition Date, $225,000 which amount, prior to the date of a Carve-Out Notice Effective Date (x) shall increase on a weekly basis by the amounts set forth in the chart in the DIP Credit Agreement, up to an amount not to exceed $950,000 at any time, and (y) shall be reduced each month by the aggregate amount of (i) payments actually made on account of Professional Fees and Expenses for the immediately preceding calendar month (whether from the application of retainers or otherwise) and (ii) unapplied retainers then held by all professionals.

(b)      Following the Carve-Out Notice (and excluding amounts incurred but not invoiced or approved prior to the Carve-Out Notice), an aggregate amount not to exceed $350,000, provided that (i) any payments actually made to such professionals for services rendered and expenses incurred during the period prior to the receipt by Borrower, its counsel, counsel to the Committee and the United States Trustee of a Carve-Out Notice shall not reduce the post-default Carve-Out, and (ii) any payments

actually made to such professionals for services rendered and expenses incurred following the receipt by Borrower, its counsel, counsel to the Committee and the United States Trustee of a Carve-Out Notice shall reduce the post-default Carve-Out on a dollar-for-dollar basis.

(c)     Upon conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code, a chapter  7 trustee shall be authorized to use up to $50,000 of the Post-Default Carve-Out to administer the chapter 7 case.

(d)     Notwithstanding the foregoing, the Committee shall be authorized to use up to $75,000 to investigate the liens, claims and interests of the Prepetition Agent and the Prepetition Lenders, but the Carve Out shall exclude any fees and expenses incurred in connection with (x) the assertion or joining in any claim, counterclaim, action, proceeding, application, motion, objection, defenses or other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief (A) invalidating, setting aside, avoiding, or subordinating, in whole or in part, (i) the DIP Obligations, (ii) the Prepetition Debt, (iii) the Prepetition Liens in the Prepetition Collateral, or (iv) the DIP Agent's or DIP Secured Parties' Liens in the DIP Collateral, or (B) preventing, hindering or delaying, whether directly or indirectly, the DIP Agent's, DIP Secured Parties' or Prepetition Secured Parties' assertion or enforcement of their Liens, security interest or realization upon any DIP Collateral, Prepetition Collateral, the Prepetition Replacement Liens, or the Prepetition Indemnity Accounts, or (C) commencing or prosecuting any Avoidance Actions against any DIP Agent, any DIP Lender, the Prepetition Agent or any Prepetition Lender, or (D)

initiating or prosecuting any claims, causes of action, adversary proceedings, or other litigation against the Prepetition Agent or any Prepetition Lender, including, without limitation, challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to, the Prepetition Obligations, any Prepetition Credit Agreement, or the Adequate Protection granted herein and (y) in using cash collateral of the DIP Agent or the DIP Secured Parties, to sell or otherwise dispose of any other DIP Collateral, or to incur any indebtedness not permitted under the DIP Credit Agreement, without the DIP Agent's express written consent.

(e)      Nothing herein shall be construed to obligate the Prepetition Secured Parties, or DIP Secured Parties, in any way, to pay any professional fees or U.S. Trustee Fees, or to assure that the Debtor has sufficient funds on hand to pay any professional fees or U.S. Trustee Fees.

(f)      The payments of the Carve Out shall not reduce the amount of the DIP Obligations or the Prepetition Debt.  Without limiting the DIP Agent's and DIP Lenders' rights under the DIP Facility Agreement and this Final Order, upon the earlier of (i) the Carve-Out Notice, and (ii) the Commitment Termination Date (as defined below), the Debtors shall place an amount equal to the unused portion of the Carve-Out into an interest-bearing reserve escrow at a financial institution reasonably acceptable to the DIP Agent (the "**Carve-Out Escrow Account**") in full and complete satisfaction of the DIP Agent's, the DIP Lenders', the Prepetition Agent's and the Prepetition Lenders' obligations in respect of the Carve-Out, which amount shall be approved by order of

the Court.

10. **Payment of Compensation**.  Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors, the Committee or of any person or shall affect the right of the DIP Secured Parties or the Prepetition Secured Parties to object to the allowance and payment of such fees and expenses or to permit the Debtor to pay any such amounts not set forth in the Budget.

11. **Section 506(c) Claims**.  Nothing contained in this Final Order shall be deemed a consent by the Prepetition Secured Parties or the DIP Secured Parties to any charge, lien, assessment or claim against the DIP Collateral, the Prepetition Collateral, the Prepetition Replacement Liens, or the Prepetition Indemnity Accounts under Section 506(c) of the Bankruptcy Code or otherwise.

12. **Collateral Rights**.  Unless the DIP Agent and, if applicable, the Tranche B Lenders have provided prior written consent or all DIP Obligations and all Prepetition Obligations have been paid in full in cash (or will be paid in full in cash upon entry of an order approving indebtedness described in subparagraph (a) below), all commitments to lend have terminated, all Letters of Credit (as defined in the DIP Credit Agreement) have been secured as required by the DIP Credit Agreement, all indemnity obligations under the DIP Credit Agreement have been cash collateralized and the Prepetition Indemnity Accounts have been established, there shall not be entered in these proceedings, or in any Successor Case, any order which authorizes any of the following:

(a)     The obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the DIP Collateral, the Prepetition Collateral, the Prepetition Replacement Liens, or the Prepetition Indemnity Account and/or entitled to priority administrative status which is equal or senior to those granted to the DIP Secured Parties, or the Prepetition Secured Parties pursuant to sections 364(c) or 364(d) of the Bankruptcy Code; or

(b)     Absent approval of this Court on notice to the DIP Agent, relief from stay by any person other than the DIP Secured Parties on all or any portion of the DIP Collateral; or

(c)     The Debtors' return of goods constituting DIP Collateral pursuant to section 546(h) of the Bankruptcy Code, except as permitted in the DIP Credit Agreement.

13.     **Commitment Termination Date**.  All (i) DIP Obligations of the Debtor to the DIP Secured Parties shall be immediately due and payable, in accordance with the DIP Credit Agreement, (ii) authority to use the proceeds of the DIP Financing Agreements and to use Cash Collateral shall cease, both on the date that is the earliest to occur, in accordance with the DIP Credit Agreement, of: (i) the maturity date as defined in the DIP Credit Agreement, (ii) the date on which the maturity of the Obligations is accelerated and the Commitments are irrevocably terminated in accordance with the DIP Credit Agreement, and (iii) the consummation date of a plan of reorganization (the "**Commitment Termination Date**").

14. **Payment from Proceeds of Collateral**. Upon entry of this Final Order, all products and proceeds of the DIP Collateral and the Prepetition Collateral (including, for the avoidance of doubt, proceeds from receivables and sales in the ordinary course of business, insurance proceeds, and proceeds of all dispositions thereof, whether or not in the ordinary course) regardless of whether such collateral came into existence prior to the Petition Date, shall be remitted to the DIP Agent for application to the DIP Obligations outstanding pursuant to the DIP Credit Agreement, in the manner set forth herein until the Roll Up is implemented. Upon entry of this Final Order, the Debtors shall pay from Cash Collateral or advances under the DIP Facility, the amounts remaining outstanding due under the Prepetition Credit Agreement other than any outstanding Term Loan (as such term is defined in the Prepetition Credit Agreement), which shall be converted to a Term Loan (as such term is defined in the DIP Credit Agreement) pursuant to the DIP Credit Agreement (the "**Roll-Up**"), provided, however, that in the event there is a timely, successful challenge to the validity, enforceability, extent, perfection or priority of the Prepetition Agent and the Prepetition Lenders' claims or liens or a determination that the Prepetition Collateral of the Prepetition Agent and the Prepetition Lenders was undersecured as of the Petition Date, the Roll Up can be unwound by the Court.

15. **Disposition of Collateral**. The Debtors shall not (a) sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral, without the prior written consent of the DIP Secured Parties or the Prepetition Secured Parties (and no such consent shall be implied, from any other action, inaction or acquiescence by the

DIP Secured Parties or the Prepetition Secured Parties or an order of this Court), except: (i) for sales of the Debtors' inventory in the ordinary course of business or (ii) as otherwise provided for in the DIP Credit Agreement and this Final Order or (iii) as approved by the Bankruptcy Court, or (b) reject or assign any leasehold interest without prior consultation with the DIP Agent and the Prepetition Agents, except as otherwise provided for in the DIP Credit Agreement.

16.    **Rights and Remedies Upon Event of Default**.

(a)    Any automatic stay otherwise applicable to the DIP Secured Parties is hereby modified so that after the occurrence of any Event of Default under the DIP Credit Agreement and at any time thereafter upon seven (7) business days' prior notice of such occurrence, in each case given to each of the Debtors, counsel for the Committee, if any, counsel for the Prepetition Agent and the U.S. Trustee (the foregoing, a "**DIP Order Event of Default**"), the DIP Agent, shall be entitled to exercise their rights and remedies in accordance with the DIP Financing Agreements including, without limitation, directing any or all of the Debtors to engage in Permitted Sales (as defined in the DIP Credit Agreement) or otherwise dispose of any or all of the Collateral on terms and conditions acceptable to the DIP Agent pursuant to Sections 363, 365 and other applicable provisions of the Bankruptcy Code.

(b)    Immediately following the giving of notice by the DIP Agent and, as applicable, the Tranche B Lenders, of the occurrence of a DIP Order Event of Default: (i) the Debtors shall continue to deliver and cause the delivery of the proceeds of DIP Collateral to the DIP Agent as provided in the DIP Credit Agreement and this Final

Order; (ii) the DIP Agent shall continue to apply such proceeds in accordance with the provisions of this Final Order and of the DIP Credit Agreement; (iii) the Debtors shall have no right to use any of such proceeds, nor any other Cash Collateral other than towards the satisfaction of the Prepetition Obligations and DIP Obligations and the Carve-Out, except as agreed to by the DIP Agent (except that the Debtors shall be permitted to use Collections in the ordinary course of business for five (5) days in accordance with the Budget); and (iv) any obligation otherwise imposed on the DIP Agent or the DIP Lenders to provide any loan or advance to the Debtor pursuant to the DIP Facility shall be suspended. Following the giving of notice by the DIP Agent of the occurrence of a DIP Order Event of Default, the Debtors shall be entitled to an emergency hearing before this Court solely for the purpose of contesting whether a DIP Order Event of Default has occurred. If the Debtors do not contest the right of the DIP Secured Parties to exercise their remedies based upon whether a DIP Order Event of Default has occurred within seven (7) days of the occurrence of a DIP Order Event of Default, or if the Debtors do timely contest the occurrence of a DIP Order Event of Default and the Bankruptcy Court after notice and hearing declines to stay the enforcement thereof, the automatic stay, as to the DIP Secured Parties, shall automatically terminate at the end of such notice period, and the Debtors shall comply with the directions given by the DIP Agent pursuant to the DIP Credit Agreement.

(c)     In any exercise of their rights and remedies upon a DIP Order Event of Default under the DIP Financing Agreements, the DIP Agent and DIP Lenders are authorized to exercise rights and remedies under or pursuant to the DIP Credit

Agreement. All proceeds realized from such exercise of rights and remedies shall be turned over to the DIP Agent for application to the Carve-Out, the DIP Obligations and the Prepetition Obligations under, and in accordance with the provisions of, the DIP Financing Agreements, the Prepetition Credit Agreement and this Final Order. The DIP Agent shall account to the estate for such proceeds and any excess proceeds shall be remitted to the estate.

(d) After the occurrence of any DIP Order Event of Default and at any time thereafter, the DIP Secured Parties shall be entitled to seek relief from stay to exercise their rights and remedies in accordance with the DIP Credit Agreement, as applicable and applicable law, provided, however, that notwithstanding anything to the contrary in this Interim Order and the DIP Credit Agreement, the DIP Agent and DIP Lenders' rights with respect to the use and/or occupancy of any premises then leased by the Debtors in the Event of Default shall be subject to: (i) the existing rights of the DIP Lenders and landlords under applicable non-bankruptcy law (if any); (ii) any written agreement with any applicable landlord; or (iii) further order of the Bankruptcy Court on motion and notice appropriate under the circumstances.

(e) The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified pursuant to the terms of the DIP Credit Agreement as necessary to (1) permit the Debtors to grant the Prepetition Replacement Liens and the DIP Liens and to incur all liabilities and obligations to the Prepetition Secured Parties, the DIP Lender under the DIP Financing Agreements, the DIP Facility and this Final Order, and

(2) authorize the DIP Lender and the Prepetition Secured Parties to retain and apply payments hereunder.

(f)     Nothing included herein shall prejudice, impair, or otherwise affect Prepetition Secured Parties' or DIP Secured Parties' rights to seek any other or supplemental relief in respect of the DIP Agent's or DIP Lenders' rights, as provided in the DIP Credit Agreement, to suspend or terminate the making of loans under the DIP Credit Agreement.

17.     **Proofs of Claim**.  The Prepetition Secured Parties and the DIP Secured Parties will not be required to file proofs of claim in the Cases or any Successor Case.

18.     **DIP Sponsor Credit Support**.  The terms set forth in Sections 2.1 and 4.15 of the DIP Credit Agreement are hereby approved.

19.     **Other Rights and Obligations**.

(a)     **Good Faith Under Section 364(e) of the Bankruptcy Code. No Modification or Stay of this Order**.  Based on the findings set forth in the Interim Order and this Final Order and in accordance with section 364(e), which is applicable to the DIP Facility contemplated by this Final Order, in the event any or all of the provisions of this Final Order are hereafter reversed or modified by a subsequent order of this or any other Court, the DIP Secured Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code with respect to amounts pursuant to this Final Order, of the Bankruptcy Code, and, provided that the Final Order is not stayed pending appeal, no such reversal or modification shall affect the validity and enforceability of any advances made hereunder or the liens or priority authorized or

created hereby. Notwithstanding any such reversal or modification, any claim granted to the DIP Secured Parties hereunder arising prior to the effective date of such reversal or modification of any DIP Protections granted to the DIP Secured Parties shall be governed in all respects by the original provisions of this Final Order, and the DIP Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits, including the DIP Protections granted herein, with respect to any such claim, provided that the Final Order was not stayed at the time the claim arose. Since the loans made pursuant to the DIP Credit Agreement are made in reliance on this Final Order, the obligations owed the DIP Secured Parties prior to the effective date of any reversal or modification of this Final Order cannot, as a result of any subsequent order in the Cases or in any Successor Cases, be subordinated, lose their lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to the DIP Secured Parties under this Final Order and/or the DIP Financing Agreements, provided that the Final Order was not stayed.

(b)     **Binding Effect**.  The provisions of this Final Order shall be binding upon and inure to the benefit of the DIP Secured Parties and the Prepetition Secured Parties, the Debtor and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) whether in the Cases, in any Successor Cases, or upon dismissal of any such chapter 11 or chapter 7 Case.

(c)     **No Waiver**.  The failure of the Prepetition Secured Parties or the DIP Secured Parties to seek relief or otherwise exercise their rights and remedies under

the DIP Financing Agreements, the DIP Facility, this Final Order or otherwise, as applicable, shall not constitute a waiver of any of the Prepetition Secured Parties' or the DIP Secured Parties' rights hereunder, thereunder, or otherwise. Notwithstanding anything herein, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the Prepetition Secured Parties or the DIP Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including without limitation, the rights of the Prepetition Secured Parties and the DIP Secured Parties to (i) request conversion of the Cases to cases under chapter 7, dismissal of the Cases, or the appointment of a trustee in the Cases, (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a plan of reorganization, (iii) exercise any of the rights, claims or privileges (whether legal, equitable or otherwise) the DIP Secured Parties or the Prepetition Secured Parties may have pursuant to this Final Order, the DIP Financing Agreements, the Prepetition Credit Agreement, or applicable law, or (iv) for the Tranche A Lenders, enforce the Intercreditor Agreement.

(d) **No Third Party Rights**. Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

(e) **No Marshaling**. Neither the DIP Secured Parties nor the Prepetition Secured Parties shall be subject to the equitable doctrine of "**marshaling**" or any other similar doctrine with respect to any of the DIP Collateral or Prepetition Collateral, as applicable.

(f) **Section 552(b)**. The DIP Secured Parties and the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code. The "**equities of the case**" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Secured Parties or the Prepetition Secured Parties with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral or the DIP Collateral.

(g) **Amendment**. The Debtors and the DIP Agent may amend or waive any provision of the DIP Financing Agreements on notice to the Office of the United States Trustee and the Committee, provided that such amendment or waiver, in the reasonable judgment of the Debtors and the DIP Agent, is both non-prejudicial to the rights of third parties and is not material. Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions of the DIP Financing Agreements shall be effective unless set forth in writing, signed on behalf of all the Debtors, the DIP Agent (after having obtained the approval of the DIP Secured Parties as provided in the DIP Financing Agreements) and the Equity Sponsor (solely with respect to provisions relating to the DIP Sponsor Credit Support as provided in the Sponsor Participation Agreement) and approved by the Bankruptcy Court.

20. **Survival of Order and Events of Default**. The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any Plan in the Cases, (ii) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code or any Successor Cases, (iii) to the extent authorized by applicable law, dismissing any of the Cases, (iv) withdrawing of the

reference of any of the Cases from this Court, or (v) providing for abstention from handling or retaining of jurisdiction of any of the Cases in this Court. The terms and provisions of this Final Order including the DIP Protections granted pursuant to this Final Order and the DIP Financing Agreements and any protections granted the Prepetition Agents and the Prepetition Lenders, shall continue in full force and effect notwithstanding the entry of such order, and such DIP Protections and protections for the Prepetition Agents and the Prepetition Lenders shall maintain their priority as provided by this Final Order until all the obligations of the Debtors to the DIP Secured Parties pursuant to the DIP Financing Agreements and to the Prepetition Secured Parties pursuant to the Prepetition Credit Agreement have been indefeasibly paid in full and discharged (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms). The DIP Obligations shall not be discharged by the entry of an order confirming a plan of reorganization, the Debtors having waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code. The Debtors shall not propose or support any plan of reorganization that is not conditioned upon the payment in full in cash of all of the DIP Obligations and the Prepetition Obligations, on or prior to the earlier to occur of (i) the effective date of such plan of reorganization and (ii) the Commitment Termination Date.

(a) **Inconsistency**. In the event of any inconsistency between the terms and conditions of the DIP Financing Agreements and of this Final Order, the provisions of this Final Order shall govern and control.

(b) **Enforceability**.  This Final Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable: (i) for the Tranche A Lenders, *nunc pro tunc* to the Petition Date immediately upon entry of this Final Order, and (ii) for the Tranche B Lenders, immediately upon entry of this Final Order.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

(c) **Objections Overruled**.  All objections to the DIP Motion to the extent not withdrawn or resolved, are hereby overruled.

(d) **No Waivers or Modification of Order**.  The Debtors irrevocably waive any right to seek any modification or extension of this Final Order without the prior written consent of the DIP Agent, Whippoorwill and the Prepetition Agent and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agent and the Prepetition Agent.

21. **Retention of Jurisdiction**.  The Bankruptcy Court has and will retain jurisdiction to enforce this Final Order.

Dated: ___*December 14, 2010*___ , 2010          ___*s/ Robert E. Gerber*___
      New York, New York          Honorable Robert E. Gerber
                                United States Bankruptcy Judge